## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **10-05650-hb**
Adversary Proceeding Number:  **10-80136-hb**

## ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE CERTAIN DEFENSES

The relief set forth on the following pages, for a total of 31 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**06/30/2011**



_____
US Bankruptcy Judge
District of South Carolina

Entered: 07/01/2011

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Kenneth Joseph Pujdak and Jo Ellen Sands Pujdak,<br><br><div align="right">Debtor(s).</div><br>Janet Voss,<br><br><div align="right">Plaintiff(s),</div><br>v.<br><br>Kenneth Joseph Pujdak<br>Jo Ellen Sands Pujdak,<br><br><div align="right">Defendant(s).</div> | C/A No. 10-05650-HB<br><br>Adv. Pro. No. 10-80136-HB<br><br><br>Chapter 7<br><br>**ORDER** |

THIS MATTER comes before the Court on the *Motion for Judgment on the Pleadings and to Strike Certain Defenses* ("Motion") (Doc. No. 21), filed by Janet Voss ("Plaintiff") in response to the *Answer and Defenses* ("Answer") (Doc. No. 20) filed by Kenneth Joseph Pujdak and Jo Ellen Sands Pujdak ("Defendants"), in this action to except certain debts from discharge pursuant to 11 U.S.C. §523(a). Plaintiff seeks relief from the Court under Federal Rules of Civil Procedure 12(c) and (f), made applicable to this adversary proceeding by Federal Bankruptcy Rule 7012. A *Response and Opposition by Defendants to Motion to Strike and Motion for Judgment on the Pleadings* ("Response") (Doc. No. 22) was filed by Defendants. Plaintiff filed a supplemental *Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings* ("Memorandum") (Doc. No. 25) on April 27, 2011. A hearing on this matter was held on April 21, 2011.

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and Local Civil Rule 83.XI.01, DSC.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## UNDISPUTED FACTS AND PROCEDURAL HISTORY

### The State Court Action

Plaintiff previously filed an action in the Court of Common Pleas for Greenville County, South Carolina against Defendants and their businesses. *Voss v. Pujdak, et. al*, C/A No. 07-CP-23-0180 (2007).  In the state court action, Plaintiff alleged that, *inter alia*, by inducing Plaintiff to invest in certain companies, Defendants and those companies violated various provisions of the South Carolina Securities Act of 2005 ("SC Securities Act"), S.C. Code Ann. § 35-1-101 *et seq.* (1976)[1], rendering them liable under S.C. Code Ann. § 35-1-509.   Plaintiff's state court complaint alleged that an investment in one of Defendants' companies was a security as defined by the SC Securities Act,[2] and that it "is

---

[1] Specifically, Plaintiff alleged that Defendants and their company, Advantage Advisory Services, violated S.C. Code Ann. §§ 35-1-501 and 502 and that Defendants and their company, The Rhythm Club, violated S.C. Code Ann. §§ 35-1-301, 501, and 502. *See* Doc. No. 12, Ex. 1 at 3-5.

[2] Under the SC Securities Act:

"Security" means any note; stock; treasury stock; security future; bond; debenture; evidence of indebtedness; certificate of interest or participation in a profit-sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; put, call, straddle, option, or privilege on a security, certificate of deposit, or group or index of securities, including an interest therein or based on the value thereof; put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, an interest or instrument commonly known as a "security"; or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. The term . . .

. . . .

(D) includes an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor and a "common enterprise" means an enterprise in which the fortunes of the investor are interwoven with those of either the person offering the investment, a third party, or other investors . . .

S.C. Code Ann. § 35-102(29).

not registered with the State or with the federal Securities Exchange Commission." (Doc. No. 12, Ex. 1 at 4). In addition, Plaintiff's complaint stated that, by inducing Plaintiff to invest in the business, Defendants made a "sale"[3] of a "security" as defined by the SC Securities Act. *Id.* at 5. Furthermore, Plaintiff specifically alleged that the sale violated the securities registration requirement[4] because the security was not registered and neither the security nor the sale was exempted from registration. In addition, Plaintiff claimed that Defendants made false and misleading claims to her. *Id.* Plaintiff's state court complaint also asserted that Defendants committed fraud, constructive fraud and violated the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq.*, and included factual allegations in support. *See* Doc. No. 12.

Defendants appeared in that action through an attorney and filed an Answer. However, after the state court found that Defendants failed to comply with discovery orders, the court struck Defendants' answer and found them in default. The court then referred the matter to the Master in Equity for a determination of damages. A damages hearing was conducted where the Plaintiff testified to her damages as well as "to the scheme and

---

[3] Pursuant to the SC Securities Act:

"Sale" includes every contract of sale, contract to sell, or disposition of, a security or interest in a security for value, and "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value. Both terms include:

(A) a security given or delivered with, or as a bonus on account of, a purchase of securities or any other thing constituting part of the subject of the purchase and having been offered and sold for value;
(B) a gift of assessable stock involving an offer and sale; and
(C) a sale or offer of a warrant or right to purchase or subscribe to another security of the same or another issuer and a sale or offer of a security that gives the holder a present or future right or privilege to convert the security into another security of the same or another issuer, including an offer of the other security.

S.C. Code Ann. § 35-1-102(26).

[4] The SC Securities Act states that: "It is unlawful for a person to offer or sell a security in this State unless: (1) the security is a federal covered security; (2) the security, transaction, or offer is exempted from registration under Sections 35-1-201 through 35-1-203; or (3) the security is registered under this chapter." S.C. Code Ann. § 35-1-301

publication of various promises by Defendants as investment potentials." *Id.*, Ex. 3 at 2.

Defendants' counsel was present at the damages hearing; however, Defendants did not

attend.  On March 31, 2008, a judgment was entered in favor of Plaintiff against Defendants

and their businesses.  The state court, entering judgment, specifically held that:

> The Court finds that . . . Defendants caused [Plaintiff] damage in the
> amount of **$41,541.96** . . . and **$1,288.72** . . . .
> . . . .
> Defendants, being in default, are liable for violation of the SC
> Securities Act, SC Code 35-1-509; common law negligence, fraud and
> constructive fraud, quantum meruit, and SC Unfair Trade Practices Act.
> Accordingly, under these theories of liability, this Court finds Plaintiff is
> damaged under each theory and Defendants are liable in the actual amount of
> $42,830.68.
> However, in terms of recovery, Plaintiff can only recover under one
> theory of damages.  Plaintiff elects recovery under SCUTPA.
> Under the SCUTPA claim, specifically SC Code 39-5-140, Plaintiff is
> entitled to a trebling of damages, and costs and attorney fees.  Damages are
> awarded in the amount of $128,492.04.  By separate affidavit, counsel for
> Plaintiff has submitted fees and costs in the amount of $7,132.50.

*Id.*, Ex. 3 at 2-4.

### The Adversary Proceeding Pursuant to 11 U.S.C. § 523

Defendants filed a voluntary chapter 7 petition for relief on August 6, 2010.  Plaintiff

initiated this adversary proceeding on September 7, 2010, by filing a Complaint seeking to

have the debt established in the state court judgment excepted from Defendants' discharge

under 11 U.S.C. § 523(a)(2)(A) and (a)(19).[5]

Defendants filed a Motion to Dismiss claiming that by electing the SCUTPA remedy

in state court, Plaintiff lost her right to pursue this action in bankruptcy court alleging any

other theory of recovery.  On February 9, 2011, this Court entered an *Order Denying Motion

to Dismiss* and granting Plaintiff leave to amend the Complaint. (Doc. No. 19).  The relevant

portions of that order are incorporated herein by reference.   The Amended Complaint

---

[5] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

attached and incorporated a copy of the state court complaint, answer and judgment (Doc.
No. 12). Thereafter, Defendants filed an Answer (Doc. No. 20) reasserting those challenges
set forth in their *Motion to Dismiss* (Doc. Nos. 4 & 5). In addition, Defendants raised
defenses in response to allegations asserted in the Amended Complaint for this adversary
proceeding and set out in the state court complaint. *See* Doc. No. 20 at 3-10.

In response to Defendants' Answer, Plaintiff filed a Motion and Memorandum
claiming that the defenses raised in the Answer should be stricken because res judicata
precludes Defendants from relitigating claims. (Doc. No. 21 at 1-2). Plaintiff also argues
that she is entitled to a judgment on the pleadings based on the admissions stated therein. *Id.*
at 2. Defendants oppose the requested relief.

<u>D</u>ISCUSSION AND <u>C</u>ONCLUSIONS OF <u>L</u>AW

Pursuant to the Federal Rules, "[t]he court may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P.
12(f). "When presented with a motion to strike, 'the court must view the pleading under
attack in a light most favorable to the pleader.'" *Monster Daddy LLC v. Monster Cable
Products, Inc.*, C/A No. 6:10-1170-HMH, 2010 WL 4853661, slip op. at *6 (D.S.C. Nov.
23, 2010) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D. W.Va. 1993)). Federal courts
generally disfavor motions to strike, and such motions "are only granted when the
challenged allegations have no possible relation or logical connection to the subject matter
of the controversy or cause some form of significant prejudice to one or more of the parties
to the action." *Moore v. Novo Nordisk, Inc*., C/A No. 1:10-2182-MBS-JRM, 2011 WL
1085650, slip op. at *8 (D.S.C. Feb. 10, 2011) (internal quotation marks and citations
omitted). Under Rule 12(f), "[t]he Court may strike from a pleading . . . any redundant,

immaterial, impertinent, or scandalous matter. . . . *This includes matter that a party is prevented from relitigating under the doctrine of res judicata.*" *Setzler v. City and Cnty. of San Francisco*, No. C 07-05792 SI, 2008 WL 2264481, slip op. at *8 (N.D. Cal. June 2, 2008) (emphasis added) (internal quotation marks and citations omitted).

Plaintiff asserts that portions of Defendants' Answer revisit issues already decided in the Court's *Order Denying Motion to Dismiss* (Doc. No. 19).  The Court agrees and therefore strikes Defendants' defenses which claim that by electing the SCUTPA remedy in state court, Plaintiff lost her right to pursue this action in bankruptcy court alleging any other theory of recovery.

Further, Plaintiff asserts that Defendants are attempting to relitigate matters already decided in the state court in violation of the preclusion doctrine; therefore, Rule 12(f) requires the Court to strike the remainder of Defendants' Answer.  If the Court agrees, then Plaintiff asserts that a judgment on the pleadings is warranted under Rule 12(c) because no disputed facts would remain. *See* Doc. Nos. 21 & 25.

### The Preclusion Doctrine

"The doctrine of res judicata bars subsequent suits involving claims that have already been reduced to judgments . . . [and] represents 'society's interest in the finality of judgments.'" *In re Rodgers*, Adv. Pro. No. 10-00171-8-JRL, 2010 WL 5014340, slip op. at *4 (Bankr. E.D.N.C. Dec. 3, 2010) (quoting *Gullette v. Barrow (In re Barrow),* 87 B.R. 879, 883 (Bankr. E.D. Va. 1988)).  It is designed to prevent a litigant "from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Id.* (citations omitted).  "However, res judicata does not bar claims that did

not exist at the time of the prior litigation." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman,* 800 F.2d 1308 1313 (4th Cir. 1986)).

The "preclusion doctrine encompasses two strands: res judicata and collateral estoppel." *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008).

> Res judicata, or claim preclusion, bars relitigation of claims that were or could have been raised in a prior proceeding between the same parties. . . . Collateral estoppel, or issue preclusion, bars the relitigation of specific issues that were actually determined in a prior action. . . . Both are estoppel doctrines, but they have differing preclusive effects in bankruptcy dischargeability litigation.

*Hasalia v. Walker (In re Walker)*, 416 B.R. 449, 462 (Bankr. W.D.N.C. 2009) (internal citations omitted); *see also Smith v. Bus. Dev. Corp.*, C/A Nos. 0:10-61-JFA-JRM, 0:10-255JFA-JRM, 2010 WL 3724736, slip op. at *4 (D.S.C. Aug. 24, 2010) (stating that res judicata or "[c]laim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters which should have been raised in an earlier suit, while [collateral estoppel or] issue preclusion refers to the effect of a judgment in precluding the relitigation of a matter actually litigated and decided.").

In determining whether the preclusion doctrine applies, "[f]ederal courts are required to refer to the preclusion law of the state in which the judgment was rendered." *Rodgers*, 2010 WL 5014340, slip op. at *4 (citing *Brooks v. Arthur*, No. 09–1551, 2010 WL 4676977, at *4 (4th Cir. Nov. 19, 2010)).  Thus, in the instant case, the Court looks to South Carolina law.

In this matter, the judgment in question was entered after the state court struck Defendants' answer and found them to be in default and, therefore, liable to Plaintiff for damages resulting from fraud and a violation of state securities laws.  This Court must determine what effect, if any, that judgment has on this litigation.

Section 523(a)(2)(A) prohibits the discharge of debt obligations "obtained by false pretenses, a false representation, or actual fraud . . ." 11 U.S.C. § 523(a)(2)(A).   Section 523(a)(19) excepts from discharge any debt that:

(A) is for—
    i. *the violation of* any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, *any of the State securities laws*, or any regulation or order issued under such Federal or State securities laws; or
    ii. common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) *results before*, on, or after *the date on which the petition was filed*, from—
    i. *any judgment*, order, consent order, or decree entered *in any* Federal or *State judicial* or administrative *proceeding*;
    ii. any settlement agreement entered into by the debtor; or
    iii. any court or administrative order or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (emphasis added).   After reading the judgment from the state court and these two sections of the Bankruptcy Code, it would appear that the matter would be easily ended with a finding that the parties are not allowed to relitigate the issue of Defendants' fraud or violation of securities laws.   However, the answer is not as simple as it initially appears.

### Res Judicata and Actions Under § 523(a)

Under South Carolina law, "[r]es judicata requires proof of three elements: 1) a final, valid judgment was entered on the merits of the first suit; 2) the parties to both suits are the same; and 3) the subsequent action involves matters properly included in the first action." *Judy v. Judy*, 383 S.C. 1, 8, 677 S.E.2d 213, 217 (Ct. App. 2009).

It is well-established that default judgments may be entitled to a preclusive effect under the theory of res judicata.  *See Riehle v. Margolies*, 279 U.S. 218, 225, 49 S.Ct. 310,

313 (1929) ("A judgment of a court having jurisdiction of the parties and of the subject-matter operates as res judicata, in the absence of fraud or collusion, *even if obtained upon a default*." (emphasis added) (citations omitted)); *see also* 50 C.J.S. *Judgments* § 975 (2011) ("A judgment rendered on default, in a case in which the court has full jurisdiction, is considered a final judgment on the merits for res judicata purposes, and operates as a merger of the cause of action, preventing any further suit on the same subject matter, including all issues which were or could have been raised in the prior action." (footnotes omitted)).

However, in the bankruptcy context, there is a general rule that state court judgments do not have res judicata effect on nondischargeability actions under § 523. "Under *Brown v. Felsen,* 442 U.S. 127, 139 n.10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 23 (4th Cir. 1997), 'the correct preclusion principle in [a § 523] case is collateral estoppel, and not res judicata,' because a § 523 action cannot be the same cause as an underlying state-court cause of action." *In re Webb*, Adv. Pro. No. 08-ap-65, 2009 WL 1139548, slip op. at *3 (Bankr. N.D. W. Va. Mar. 31, 2009) (citing *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *but see In re Genesys Data Tech., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000) (stating that the *Brown* decision allows bankruptcy courts to "have the discretion to hear certain claims that would otherwise be barred by res judicata. . . . But when a bankruptcy court is considering the validity of a claim upon which debt is based, no new special bankruptcy defense is involved and so res judicata applies as it ordinarily would." (citations omitted)).

The general principle that res judicata does not apply to nondischargeability claims in bankruptcy court was set forth in *Brown*. 442 U.S. 127, 99 S.Ct. 2205.

The circumstances there were the following: (1) Brown sued Felsen in state court seeking money that (Brown said) Felsen had obtained through fraud;

(2) the state court entered a consent decree embodying a stipulation providing that Felsen would pay Brown a certain amount; (3) neither the decree nor the stipulation indicated the payment was for fraud; (4) Felsen did not pay; (5) Felsen entered bankruptcy; and (6) Brown asked the Bankruptcy Court to look behind the decree and stipulation and to hold that the debt was nondischargeable because it was a debt for money obtained by fraud.

*Archer v. Warner*, 532 U.S. 314, 319, 123 S.Ct. 1462, L.Ed.2d 454 (2003) (citing *Brown*, 442 U.S. at 128–29, 99 S.Ct. 2205). Effectively, Brown was asking the bankruptcy court to look behind the terms of the consent decree and stipulation to the circumstances giving rise to the original lawsuit. *Brown*, 442 U.S. at 128-29, 99 S.Ct. 2205.

The Supreme Court recognized that state law claim preclusion principles would bar Brown from reasserting a claim based on the same cause of action. *Id.* at 131, 99 S.Ct. 2205 (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct 970, 59 L.Ed.2d 210 (1979)). Indeed, this aspect of res judicata would prevent Brown from litigating "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Id.* (citations omitted). Despite this, the Court unanimously held that res judicata did not confine the bankruptcy court "to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt." *Id.* at 138-39, 99 S.Ct. 2205. Therefore, the bankruptcy court may look beyond the stipulation and consent judgment to determine whether the debt was one for money obtained by fraud. *See Shadow Factory Films Ltd., Co. v. Swilley (In re Swilley)*, 295 B.R. 839, 845 (Bankr. D.S.C. 2003) (finding that, under *Brown*, "bankruptcy courts are not confined to reviewing the judgment and record of a prior state court proceeding when considering the dischargeability of debt"). The Court reasoned that applying res judicata would take away the dischargeability "issues of the bankruptcy courts well suited to adjudicate them and force those issues onto state courts concerned with

other matters, all for the sake of repose the bankrupt has long since abandoned." *Brown*, 442

U.S. at 139, 99 S.Ct 2205 (footnote omitted).

*Brown*, a Bankruptcy Act case, was reaffirmed and extended by the Supreme Court

in the Bankruptcy Code case of *Archer v. Warner*, 538 U.S. at 323, 123 S.Ct. 1462.  Like

*Brown*, the plaintiffs in *Archer* brought a state court action against the debtors, the Warners,

for fraud and other claims related to the Warners' sale of a company to the Archers. *Id.* at

317-18, 123 S.Ct. 1462.  However, instead of a stipulation and consent judgment, the parties

in *Archer* entered into a settlement agreement, which provided that the Warners would pay

the Archers a sum certain under a promissory note. *Id.* at 317, 123 S.Ct. 1462.  The

agreement also specifically released the Warners from all other claims, and stated that the

parties did not admit any liability or wrongdoing, and dismissed the state court action with

prejudice. *Id.*  Thereafter, the Warners did not pay the debt and filed for bankruptcy after the

Archers initiated another state court action for collection. *Id.* at 317-18, 123 S.Ct. 1462.  The

Archers brought an adversary proceeding in the bankruptcy court requesting that the debt be

declared nondischargeable as a debt obtained by fraud under § 523(a)(2). *Id.* at 318, 123

S.Ct. 1462.  The Warners contended that it was not a debt obtained by fraud; rather, the

settlement agreement, releases, and promissory note acted as a "novation," leaving only "a

debt for money promised in the settlement agreement itself." *Id.* at 319, 123 S.Ct. 1462.

Applying the *Brown* Court's basic reasoning, the *Archer* Court held that extrinsic

evidence may be considered by the bankruptcy court in order to determine the

dischargeability of a debt where the parties settle the state court action based on fraud, even

where there is no resulting judgment entered by the state court. *Id.* at 319-22, 123 S.Ct.

1462.  The Court reasoned that if reducing the fraud claim to a settlement debt changed the

nature of the debt for dischargeability purposes, then the nature of the debt in *Brown* would also have changed, making it dischargeable. *Id.* 320, 123 S.Ct. 1462.  In addition, the Court found that the novation theory would make the *Brown* Court's instruction that the bankruptcy court "weigh all the evidence" pointless because "[t]here would have been nothing for the Bankruptcy Court to examine." *Id.*  The Court found that the principle set forth in *Brown*, stating that "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt," *Brown*, 442 U.S. at 138, 99 S.Ct. 2205, also applies in the settlement agreement context. *Archer*, 538 U.S. at 320-21, *1*23 S.Ct. 1462.  Thus, the Supreme Court's holdings in *Brown* and *Archer* "effectively prohibit[] the blanket application of res judicata to prepetition state court determinations regarding the dischargeability of debts . . ." *Swilley*, 295 B.R. at 845.

### Collateral Estoppel and Default Judgments

Since the holdings of *Brown* and *Archer* prohibit the application of res judicata to nondischargeability claims asserted under § 523(a)(2)(A), the Court must determine whether collateral estoppel precludes Defendants from asserting certain defenses. "[T]he party asserting collateral estoppel must demonstrate that the issue in the present law suit was (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Cross v. Deutsche Bank Trust Co. Americas*, C/A No. 3:11-1010-CMC-PJG, 2011 WL 1624958, slip op. at *4 (D.S.C. April 28, 2011).  South Carolina courts have adopted the general rule of collateral estoppel set forth in the Restatement. *See S.C. Property & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C.

210, 213, 403 S.E.2d 625, 627 (1991) (citing Restatement (Second) of Judgments § 27

(1982)).

> Section 27 [of the Restatement] states: "When an issue of fact or law is
> *actually litigated* and determined by a valid and final judgment, and the
> determination is essential to the judgment, the determination is conclusive in
> a subsequent action between the parties, whether on the same or different
> claim."

*State v. Bacote*, 331 S.C. 328, 330-31, 503 S.E.2d 161, 162 (1998) (emphasis added) (citing

*Palm v. Gen. Painting Co., Inc.,* 302 S.C. 372, 374, 396 S.E.2d 361, 362 (1990) ("Under the

doctrine of collateral estoppel . . . the second action is based upon a different claim and the

judgment in the first action precludes relitigation of only those issues 'actually and

necessarily litigated in the first suit.'")).   Therefore, "[i]n the context of a default judgment,

collateral estoppel or issue preclusion does not apply because an essential element of that

doctrine requires that the claim sought to be precluded actually have been litigated in the

earlier litigation." *Id.* at 331, 503 S.E.2d at 163 (citing 50 C.J.S. *Judgments* § 797 (1997));

*see also Givens v. Field (In re Field)*, 226 B.R. 176, 177-78 (Bankr. D.S.C. 1998) (holding

that, because West Virginia also applies collateral estoppel as set forth in the Restatement,

the state court's default judgment did not have collateral estoppel effect because the action

was not actually litigated.).

### The State Court Default Judgment for Fraud and Plaintiff's Action
### Under § 523(a)(2)(A)

A set of facts similar to the instant case were presented in *Sartin v. Macik*. 535 F.3d

at 286-87.   The plaintiffs filed a state court action asserting several claims against the

defendant, including fraud and constructive fraud. *Id.*   However, after finding the defendant

willfully failed to comply with the discovery order, "the [state] court struck [the

defendant's] answer [entered a default judgment] and awarded the [plaintiffs] . . . actual

damages, which the court then trebled . . . under the state's unfair and deceptive trade practices statute, and costs and attorney's fees." *Id.* Sometime thereafter, the defendant filed a voluntary chapter 7 petition and the plaintiffs initiated an adversary proceeding to have the state court judgment debt declared nondischargeable pursuant to § 523(a)(2), (4), and (6). *Id.* at 287. The Fourth Circuit found that *North Carolina* "follows 'traditional' formulations of res judicata and collateral estoppel." *Id.* at 288 (citations omitted). Like South Carolina, North Carolina courts have "relied upon section 27 of the Restatement when defining 'collateral estoppel as that doctrine was traditionally applied.'" *Id.* (citations omitted). Furthermore, "[t]he comments to section 27 explain . . . that '[i]n the case of a judgment entered by confession, consent or *default*, *none of the issues is actually litigated*. Therefore, the rule of this Section does *not* apply with respect to any issue in a subsequent action.'" *Id.* at 288-89 (emphasis in original) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27). Thus, in a similar case the Fourth Circuit held that, the result of adopting the Restatement's approach is that "default judgments do not possess collateral estoppel effect . . ." *Id.* at 289.[6]

Like the *Sartin* case, these Defendants' answer was stricken and a default judgment was issued against them for failure to comply with discovery orders. The state court found Defendants liable for, *inter alia*, fraud and constructive fraud, based on the allegations of Plaintiff's state court complaint and Defendants' admission thereof (as a result of the default). However, there is no evidence that the issue of whether Defendants incurred the debt as a result of false pretenses, a false representation, or actual fraud was actually

---

[6] In support of its decision, the court stated that "[o]ther authoritative sources confirm that the Restatement accurately describes the *traditional* rule that default judgments have no collateral estoppel effect, while acknowledging that some courts have created exceptions to this traditional rule." *Sartin v. Macik*, 535 F.3d 284, 289 (4th Cir. 2008) (emphasis in original) (citing 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][k] (3d ed.2008); 50 C.J.S. *Judgments* § 797 (2008); 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4440 (2d ed.2002); 47 Am.Jur.2d *Judgments* § 542 (2008)).

litigated before the judgment was entered.   Therefore, the requirements for collateral

estoppel have not been met by the underlying state court action.  As a federal court applying

South Carolina law, the Court holds that the default judgment against Defendants is not

entitled to collateral estoppel effect in this subsequent bankruptcy proceeding with regard to

the § 523(a)(2)(A) claim.   Thus, there is no basis to strike any portions of Defendants'

Answer related to the § 523(a)(2)(A) cause of action.

<div align="center">

**The State Court Default Judgment and this Plaintiff's Action
Under § 523(a)(19)**

</div>

The effect of prior judgments on a determination of dischargeability under

§ 523(a)(19) is distinguishable from nondischargeability claims under § 523(a)(2), (4), and

(6) in a number of ways.  The latter are governed by § 523(c)(1), which provides that:

> a debtor shall be discharged from a debt of a kind specified in paragraph (2),
> (4), or (6) of subsection (a) of this section, unless, on request of the creditor
> to whom such debt is owed, and after notice and a hearing, the court
> determines such debt to be excepted from discharge under paragraph (2), (4),
> or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1).  This provision is supplemented by Bankruptcy Rule 4007(c), which

establishes a sixty (60) day deadline from the meeting of the creditors under § 341(a) to file

a complaint to determine the dischargeability of a debt under § 523(c). Fed. R. Bankr. P.

4007(c).  "In other words, the Bankruptcy Code and the Bankruptcy Rules contemplate that

dischargeability determinations under § 523(a)(2), (4) and (6) will be made exclusively by

the bankruptcy court and that a debt will be discharged unless a dischargeability

determination is requested in the bankruptcy court . . ." *In re Chan*, 355 B.R. 494, 500

(Bankr. E.D. Pa. 2006).  Conversely, there is no such requirement for claims asserted under

§ 523(a)(19); therefore, a "determination of dischargeability under the provision is not

committed exclusively to the bankruptcy court by 11 U.S.C. § 523(c).  Other courts, state

<div align="center">15</div>

and federal, have concurrent jurisdiction to determine dischargeability." *Id.* at 503 (citing *In re Otto*, 311 B.R. 311 B.R. 43, 46 (Bankr. E.D. Pa. 2004)).   However, it is this court's opinion that only the non-bankruptcy court that presided over the underlying claim has the jurisdiction to make the *liability* determination for a 523(a)(19) claim. *See infra* p. 18; *see also Nusse v. Jafari (In re Jafari)*, 401 B.R. 494, 497-98 (Bankr. D. Colo. 2009) (stating that both courts have concurrent jurisdiction to determine the dischargeability of a § 523(a)(19) claim, but only the non-bankruptcy court has the jurisdiction to make the liability determination).

Section 523(a)(19) was adopted on July 30, 2002, as part of Title VII of the Sarbanes-Oxley Act of 2002.   Title VII of the Act is entitled "the Corporate and Criminal Fraud Accountability Act of 2002" ("CCFAA").   Section 803 of the CCFAA added § 523(a)(19) to the Bankruptcy Code as an additional exception to discharge.   Congress provided that one of the main purposes of the CCFAA was "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy . . ." S.Rep. No. 107-146, at 2 (2002).   The section by section analysis and discussion of the CFFAA submitted by its author, Senator Patrick Leahy, provides that enacting § 523(a)(19):

> would amend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover their losses.   Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This loophole in the law should be closed to help defrauded investors recoup their losses and to *hold accountable those who violate securities laws after a government unit or private suit results in a judgement* [sic] *or settlement against the wrongdoer.*

*Id.* at 16 (emphasis added).   The Act's legislative history also emphasized that such an amendment to the Code was necessary because:

Under current laws, *state regulators are often forced to "reprove" their fraud cases in bankruptcy court to prevent discharge* because remedial statutes often have different technical elements than the analogous common law causes of action. *Moreover, settlements may not have the same collateral estoppel effect as judgments obtained through fully litigated legal proceedings.* In short, with their resources already stretched to the breaking point, state regulators must *plow the same ground twice in securities fraud cases. By ensuring securities law judgments and settlements in state cases are non-dischargeable, precious state enforcement resources will be preserved and directed at preventing fraud in the first place.*

*Id.* (emphasis added).

Section 523(a)(19) was subsequently amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to state that the provision applies to such debts memorialized in judgments, orders, etc., that result "before, on, or after the date on which the petition was filed." 11 U.S.C. § 523(a)(19)(B).  As amended, § 523(a)(19) provides that a discharge under § 727 does not discharge a debt that:

(A) is for—
    i.  *the violation of* any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, *any of the State securities laws*, or any regulation or order issued under such Federal or State securities laws; or
    ii.  common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) *results before*, on, or after *the date on which the petition was filed*, from—
    i.  *any judgment*, order, consent order, or decree entered *in any* Federal or *State judicial* or administrative *proceeding*;
    ii.  any settlement agreement entered into by the debtor; or
    iii.  any court or administrative order or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19) (emphasis added).  The amending language furthered Congress' goal of punishing those who commit securities-related misdeeds by expanding the timeframe for the underlying judgment, settlement, order or decree to be entered.

After § 523(a)(19) was enacted in 2002 and prior to the BAPCPA amendment in 2005, it was well-settled that the provision required a pre-bankruptcy judgment, settlement agreement, or order memorializing the debtor's liability for the underlying securities law violation as a condition precedent to the nondischargeability action in the bankruptcy court. However, the BAPCPA's amending language has caused a split among bankruptcy courts as to whether § 523(a)(19) now allows a bankruptcy court to render its own determination of liability for securities law violations or whether the liability determination must still be made outside of the bankruptcy court. *Compare Chan*, 355 B.R. at 504 (holding that the BAPCPA amendment allows either a bankruptcy court or a non-bankruptcy court forum to determine the underlying securities law liability in a § 523(a)(19) proceeding), *with In re Zimmerman*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006) (finding that the BAPCPA amendment expressed Congress' intent that claims under § 523(a)(19) should be litigated in a non-bankruptcy forum), *and Jafari*, 401 B.R. at 499 ("If the Court were to interpret [the amending] language broadly enough to allow the bankruptcy court's own order to satisfy the [Subsection A] requirement, then it would essentially read the Subsection B requirement out of the statute.").

The Court is persuaded by the reasoning set forth in *Jafari*, thereby requiring a non-bankruptcy forum to determine liability on Plaintiff's claim that Defendants violated securities laws.  The court, therefore, concludes that "[o]ne of the required elements for a finding of nondischargeability under [§ 523(a)(19)] is that the *liability* determination has been made outside of the bankruptcy court.  Other subsections contain no such requirements, such as subsections (a)(1)-(4), (a)(6) . . ." *Jafari*, 401 B.R. at 499 (emphasis in original). The inclusion of § 523(a)(19)(B) strips the bankruptcy court of its ability to determine

whether the debtor did in fact violate the securities laws; therefore, the non-bankruptcy court's liability determination should have preclusive effect in the nondischargeability action. *See id.* at 498 (stating that the legislative history of § 523(a)(19) "emphasized that a primary purpose of this statute was to ensure that judgments and settlements from state securities fraud cases are *nondischargeable without the need to re-litigate the matter in bankruptcy court*." (emphasis added)).

Even if this Court's agreement with *Jafari* is incorrect and the bankruptcy court enjoys concurrent jurisdiction over the liability determination to enter an order that satisfies § 523(a)(19), the Court finds that when that determination has already been made by another court, the plain language of § 523(a)(19) along with the intent thereof require this Court to accept the state court's determination of liability without relitigation.    Essentially, § 523(a)(19) precludes discharge of the debt if two conditions are met: (1) under subsection A, the Plaintiff must establish that the debt is for a violation of securities laws or for fraud in connection with the purchase or sale of a security; and (2) under subsection B, the debt must be memorialized in a judicial or administrative order or in a settlement agreement. *See id.* at 496.  Unlike § 523(a)(2), (4), and (6), § 523(a)(19) explicitly requires entry of an underlying judgment, order, or settlement agreement before it is applicable.

> [T]he merits of the § 523(a)(19) discharge exception are indistinguishable from the merits of the underlying legal claim.  Unlike other subsections of § 523(a) [i.e., §523(a)(2), (4), (6), (7), and (9)], which establish exceptions to discharge defined by elements specified in the Bankruptcy Code, the § 523(a)(19) discharge exception is defined, at least in part, in terms of claims established under specified non-bankruptcy statutes.

*Chan*, 355 B.R. at 503 (footnote omitted).[7]   Therefore, when an action is based on a violation of a state's securities laws, a state court's judgment can serve as the basis for a bankruptcy court's finding of non-dischargeability.   The Code does not add any new elements that must be proven under § 523(a)(19) and does not give the bankruptcy court exclusive jurisdiction to enter a judgment for any securities law violation.   Thus, a determination of dischargeability under § 523(a)(19) is made when the state court makes a finding of a violation of the state securities laws and a judgment is entered.[8]

Section 523(a)(19) parallels other nondischargeability provisions that require a determination outside the bankruptcy court as a condition precedent for finding the debt dischargeable.   Subsections 523(a)(11) and (13)[9] are similar to (a)(19) because "[i]n each of these subsections, the bankruptcy court does not litigate the underlying claim, but only whether such a claim has already been established . . ." *Jafari*, 401 B.R. at 499.   Therefore, the bankruptcy court's only function is to determine whether the underlying order,

---

[7] Conversely, under § 523(a)(2):

> If a determination of fraud has already been made in a non-bankruptcy court forum, then the bankruptcy court will analyze whether that prior adjudication is entitled to collateral estoppel in a § 523 proceeding. If the other forum's decision is not final or if it is the result of a default judgment it may not be entitled to collateral estoppel. Similarly, if the parties entered into a settlement agreement, admitting fraud, the bankruptcy court might not give collateral estoppel effect if the matter had not been "actually litigated." If the admission or prior determination is not entitled to preclusive effect, then nothing in the statute prevents the bankruptcy court from hearing and determining if the debt arises from fraud, without regard to the prior determination. If the language of § 523(a)(19) had ended after its Subsection A requirement, it would have paralleled this language of § 523(a)(2)(A) and clearly the bankruptcy court would have been able to determine liability if it were not bound by a prior determination.
>
> *By including the Subsection B requirement in § 523(a)(19), however, Congress sought to signal something different.*

*Nusse v. Jafari (In re Jafari)*, 401 B.R. 494, 497-98 (Bankr. D. Colo. 2009).

[8] In fact, § 523(a)(19) does not require a judgment at all, as consent orders, settlement orders, and "any court or administrative order or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor" will suffice. 11 U.S.C. § 523(a)(19)(B).

[9] Pursuant to the Bankruptcy Code a debtor is not discharged of a debt that is "for any payment of an order of restitution issued under title 19, United States Code." 11 U.S.C. § 523(a)(13).

judgment, settlement agreement, etc. has satisfied the requirements set forth in the

applicable § 523 provision.  For example, under § 523(a)(13),

> the [bankruptcy] court does not determine whether the debtor is guilty of a
> title 18 crime and/or whether restitution should be awarded. "The
> [bankruptcy] court merely determines whether the order at issue has imposed
> an obligation that is in the nature of 'restitution' and whether it was issued
> under the federal criminal code."

*Id.* (quoting *In re* Jensen, 395 B.R. 472, 488 (Bankr. D. Colo. 2008)).

These limitations on the bankruptcy court's jurisdiction necessarily indicate that

Congress intended the underlying non-bankruptcy decisions or settlements to have

preclusive effect in nondischargeability actions before the bankruptcy court.  Specifically,

when analyzing the preclusive effect of a non-bankruptcy court judgment in a

nondischargeability action based on § 523(a)(11), the Seventh Circuit held that Congress

preempted the common law collateral estoppel principle by enacting § 523(a)(11). *Meyer v.

Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994).  Section 523(a)(11) provides that a discharge

does not discharge the debtor from a debt:

> provided in *any* final judgment, unreviewable order, or consent order or
> decree entered in any court of the United States or of any State, issued by a
> Federal depository institutions regulatory agency, or contained in any
> settlement agreement entered into by the debtor, arising from any act of fraud
> or defalcation while acting in a fiduciary capacity committed with respect to
> any depository institution or insured credit union.

11 U.S.C. § 523(a)(11) (emphasis added).  Like § 523(a)(19), (a)(11) provides for an

underlying determination of liability that, in itself, serves as the basis for rendering a debt

nondischargeable.

The *Meyer* court found that "[t]he plain language of section 523(a)(11) requires the

bankruptcy court [to] give preclusive effect to dispositions, like default judgments (a default

judgment is *any* judgment) and non-court approved settlement agreements, that would not be

given preclusive effect under the common law." *Meyer*, 36 F.3d at 1380 (emphasis in original). Therefore, the court concluded that Congress' purpose for enacting § 523(a)(11) was to preempt collateral estoppel under the common law by "expand[ing] the preclusive effect given [to] certain prior actions in bankruptcy discharge exception proceedings." *Id.* at 1379. The court reasoned that if § 523(a)(11) was not interpreted to have this preclusive effect, it would be redundant because "any debt dischargeable under section 523(a)(11) was already dischargeable under section 523(a)(4)."[10] *Id.* Therefore, the court ultimately held that a default judgment[11] may have preclusive effect in a nondischargeability action because § 523(a)(11) preempted common law collateral estoppel, which requires that the underlying claim be "actually litigated." The court then looked to the underlying complaint to determine whether the requirements for nondischargeability under § 523(a)(11) were sufficiently plead in order to have preclusive effect.[12] *Id.* at 1382.

The holding of *Meyer*, extending collateral estoppel to give preclusive effect to decisions not "actually litigated," was recognized by the court in *Mollasgo v. Tills (In re Tills)*, 419 B.R. 444 (Bankr. S.D. Cal. 2009) for § 523(a)(19) claims. The *Tills* court looked to § 523(a)(11) and the *Meyer* decision for guidance in interpreting the preclusive effect of a settlement agreement under § 523(a)(19) "[b]ecause section 523(a)(11) extends preclusive effect to settlement agreement determinations, [therefore,] cases involving section 523(a)(11) and settlement agreements offer insight into the proper analysis of section

---

[10] Section 523(a)(4) states that a debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

[11] In *Meyer v. Rigdon*, 36 F.3d, 1375 (7th Cir. 1994), the FDIC filed a suit against the debtor and other defendants in the United States District Court for the Southern District of Indiana. *Id.* at 1377. "The FDIC's complaint alleged, *inter alia*, that the defendants breached their fiduciary duty to the Bank . . . The district court entered a default judgment against [debtor] . . . because he failed to respond to the complaint." *Id.*

[12] Specifically, the court analyzed "whether the default judgment entered against [debtor] arose from 'any act of fraud or defalcation while acting in a fiduciary capacity.'" *Id.* at 1382 (quoting 11 U.S.C. § 523(a)(11)).

523(a)(19).” *Id.* at 455 (citing *Comm'r v. Keystone Consol. Indust.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993) (“identical words used in different parts of the same act are intended to have the same meaning”)).

Although *Tills* involved a settlement agreement, the court acknowledged and agreed that “*subsections 523(a)(11) and (19) expand the Court's ability to utilize issue preclusion . . .*” *Id.* (emphasis added).[13]   The *Tills* court went on to find that when expanding collateral estoppel:

> the *Meyer* court, in the default judgment context, looked behind the default judgment to the text of the complaint to determine whether the findings required for non-dischargeability were sufficiently plead to have been necessarily decided for application of [collateral] estoppel.

*Id.* at 456 (internal citations omitted).   Because § 523(a)(11) also extends the preclusive effect to judgments and the *Meyer* court specifically contemplated a default judgment scenario, the reasoning of *Meyer* and its § 523(a)(11) analysis are equally applicable to the instant case as they were in *Tills*.   The Court is therefore able to apply issue preclusion to those matters not “actually litigated” and look to the face of the state court complaint, which is incorporated into the Amended Complaint for this adversary proceeding, to determine

---

[13] The Court also finds support in the legislative histories of § 523(a)(11) and (19) for expanding the preclusive effect of collateral estoppel for § 523(a)(19) as the *Meyer* court did for § 523(a)(11).  During the floor debate on § 523(a)(11), Congressman Jack Brooks stated that the changes set forth in the provision:

> are changes to the Bankruptcy Code which close off the bankruptcy escape hatch for bank and thrift insiders [who commit] acts of financial fraud and malice . . . Banking regulators will now be able to prosecute these con artists with the needed confidence that *the victories won in enforcement proceedings will not be nullified in bankruptcy proceedings*.

136 Cong. Rec. H13288, 13289 (daily ed. Oct. 27, 1990) (statement of Rep. Brooks) (emphasis added).  This statement parallels the legislative intent for enacting § 523(a)(19) because it was intended to close the loophole that allowed securities law violators to discharge their obligations imposed under court judgments or settlements and to prevent state regulators from having to “reprove” their securities law violations in bankruptcy court. S.Rep. No. 107-146, at 16 (2002); *see also Jafari*, 401 B.R. at 498 (stating that the legislative history of § 523(a)(19) “emphasized that a primary purpose of this statute was to ensure that judgments and settlements from state securities fraud cases are nondischargeable without the need to re-litigate the matter in bankruptcy court”).

23

whether it sufficiently alleges those requirements set forth by § 523(a)(19).  Consequently,

South Carolina's traditional approach to collateral estoppel, requiring that matter be

"actually litigated," is altered in § 523(a)(19) actions. *See Meyer*, 36 F.3d at 1379 (finding

that "because collateral estoppel is a common law creature, it can, of course, be pre-empted

by Congressional action").

In the case at hand, the state court struck Defendants' answer and found them in

default after they failed to comply with discovery orders.  The court then referred the matter

to the Master in Equity for a determination of damages.  Defendants did not appear at the

damages hearing; however, their counsel and Plaintiff and her counsel were present.

Plaintiff testified at the damages hearing and thereafter a judgment was entered in favor of

Plaintiff against Defendants and their businesses.   Defendants' Answer in this

dischargeability action admits that the state court entered a default judgment against them,

finding Defendants liable for, *inter alia*, violating the SC Securities Act, common law

negligence, fraud and constructive fraud. *See* Doc. No. 20 at ¶¶ H, viii-ix.  In addition,

Defendants' Answer admits that the state court awarded the Plaintiff costs and damages for

$42,830.68.[14] *See id.* at ¶ H, ix.  However, Defendants' Answer also inconsistently asserts

defenses to the state court complaint by denying any violations of the SC Securities Act. *Id.*

at ¶ H, vii # 25-47.

Like the debtor/defendant in *Meyer*, the Defendants had their chance to defend the

claim for violation of the SC Securities Act in state court and substantially participated in

that action.  Although whether Defendants violated the SC Securities Act was not "actually

litigated" in state court, § 523(a)(19) alters the collateral estoppel effect of that judgment.

---

[14] The amount of Plaintiff's damages was trebled under the South Carolina Unfair Trade Practice Act
(SCUTPA).

*See supra* p. 23-34; *see also Meyer*, 36 F.3d at 1381-82 ("Under the plain language of

523(a)(11), the bankruptcy court is required to give preclusive effect to, *inter alia*, certain

final judgments entered by federal courts.  If the debt results from a final judgment arising

from the debtor's fraud or 'defalcation' while acting in fiduciary capacity of a depository

institution, the debt is *per se* nondischargeable in bankruptcy.  No additional evidence need

or may be submitted to the bankruptcy court—the debtor is estopped from challenging the

nondischargeability of his debt."); *Fed. Trade Comm'n v. Harrell (In re Harrell)*, C/A No.

98-06980-W, Adv. No. 98-80266-W, 1999 WL 33486091, slip op. at *4 (Bankr. D.S.C.

April 22, 1999) (applying federal collateral estoppel law, the court stated that one of the

exceptions to the general rule that federal courts are reluctant to apply collateral estoppel to

default judgment is "when a party substantially participated in the [underlying] court

proceeding and had a full and fair opportunity to defend the complaint on the merits but

chose not to").[15]  Therefore, Defendants do not get a second chance to litigate the issue of

---

[15] *Hodges v. Buzzeo*, 365 B.R. 578 (Bankr. W.D. Pa. 2007), involved a nondischargeability action arising under
§ 523(a)(19).  In *Buzzeo*, the complaint in the underlying lawsuit that alleged securities violations was filed
only against Mr. Buzzeo. *Id.* at 580.  However, a settlement agreement was reached that both Mr. and Mrs.
Buzzeo contractually agreed to be required for the payment stated therein. *Id.*  Despite the fact that both
entered the settlement agreement, the judgment was entered only against Mr. Buzzeo. *Id.* at 581.  After failure
to make the payment under the settlement agreement, the plaintiffs brought a breach of contract action against
both Mr. and Mrs. Buzzeo. *Id.*  In the contract action, the court entered a supplemental judgment for a sum
certain against both debtors. *Id.*  Sometime thereafter, the debtors filed for bankruptcy relief and the plaintiffs
brought a nondischargeability action under § 523(a)(19).

Unlike the *Meyers* court, the court in *Buzzeo* found that, under *Archer*, the settlement agreement did
not preclude the court from examining the underlying facts to determine whether the plaintiff's claims were
nondischargeable under § 523(a)(19). *Id.* at 583.  However, with regard to Mr. Buzzeo, the bankruptcy court
concluded that summary judgment could be granted in favor of the plaintiff because the undisputed underlying
facts established the requirements of § 523(a)(19) (i.e., that the obligation arose from common law fraud in
connection with the sale of a security and that debt resulted from a settlement agreement and the resulting
judgment entered by the court).  The court ruled differently with respect to Mrs. Buzzeo and held that an
evidentiary hearing was required for the claim against her because, despite the fact that she "agreed to liability
for the obligation," *id.* at 584, there was nothing in the settlement agreement or any amendments thereafter that
indicated she had committed any wrongdoing, as required by § 523(a)(19)(A). *Id.*  In addition, she was not a
party to the underlying litigation nor was there a judgment entered against her. *Id.*

The Defendants in the instant case are more like Mr. Buzzeo than Mrs. Buzzeo.  Their state court
action was more than a mere default situation because they actively participated in the litigation by filing an
answer, but later did not respond to discovery orders, resulting in default.  In addition, looking beyond the

whether they violated the SC Securities Act in this action.  The Court, therefore, holds that

any portion of the Defendants' Answer that asserts defenses related to claims for violations

of the SC Securities Act, s*ee* Doc. No. 20 at ¶ H, vii # 25-47, is hereby stricken.[16]

### Plaintiff's Motion for Judgment on the Pleadings

A party may move for a judgment on the pleadings after the pleadings are closed, but

early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c).

> A motion for judgment on the pleadings under Federal Rule of Civil
> Procedure 12(c) may be granted "where there are no material facts in dispute
> and the moving party is entitled to judgment as a matter of law." . . . "The
> standard of review for a 12(b)(6) and a 12(c) motion is nearly the same . . .
> with the real difference being that on a 12(c) motion, the Court considers the
> [a]nswer as well as the [c]omplaint."

*Garcia-Contreras v. Brock & Scott, PLLC*, __ F. Supp.2d __, 2011 WL 1238822, slip op. at

*7 (M.D.N.C. Mar. 31, 2011) (internal citations omitted); *see also Rodgers*, 2010 WL

5014340, slip op. at *4 (stating that a court should grant a "[j]udgment on the pleadings . . .

when there is 'no issue as to material fact and only matters of law remain.'" (quoting

*McDow v. Sours (In re Sours),* 350 B.R. 261, 265 (Bankr. E.D. Va. 2006))).

"[A] court considering a motion for judgment on the pleadings must base its decision

solely on information obtained from the pleadings." *Med-Trans Corp. v. Benton*, 581

---

judgment to the Plaintiff's state court complaint, she alleged wrongdoing committed by the Defendants that
results in a claim under § 523(a)(19). *See infra* at p. 28-30. The Defendants are not like Mrs. Buzzeo because
the judgment is entered against both of them and they were both named as defendants in all relevant actions.

[16] In the alternative, Plaintiff asserts that Defendants should be precluded from asserting defenses to the state
court complaint by the *Rooker-Feldman* doctrine. (Doc. No. 25 at 6).  "The *Rooker–Feldman* doctrine prevents
the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging
'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S.
459, 460, 126 S.Ct. 1198, 1199 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries
Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).  "[A]s the Supreme Court made clear in
*Exxon Mobil Corp.* . . . . the *Rooker-Feldman* doctrine only bars collateral attacks on state court judgments; it
does not supplant the normal rules of preclusion." *Sartin*, 535 F.3d at 287 n.1.  In the instant case, Defendants
do not request to have the state court default judgment against them overturned.  Therefore, the *Rooker-
Feldman* doctrine does not apply. *See id.*  "Instead the rules of preclusion govern whether a litigant may, in a
bankruptcy proceeding, revisit an issue previously addressed in a state court action." *Id.* (citations omitted).

F.Supp.2d 721, 728 (E.D.N.C. 2008) (citations and footnote omitted).  Upon such motion,

"the court 'assumes the facts alleged in the relevant pleadings to be true . . . and . . . draw[s]

all reasonable inferences therefrom.'" *In re McClure Properties, Inc.*, Adv. Pro. No. 10-146,

2011 WL 1300811, slip op. at *1 (Bankr. N.D. W.Va. April 4, 2011) (quoting *Volvo Constr.

Equip. N. Am., Inc. v. CLM Equip. Co.,* 386 F.3d 581, 591 (4th Cir.2004)).  "Inferences are

drawn in favor of the non-moving party." *Id.* (citing *Burbach Broad. Co. v. Elkins Radio

Corp.,* 278 F.3d 401, 406 (4th Cir.2002)).

Many defenses asserted in response to the § 523(a)(2)(A) cause of action remain in

the pleadings and have not been stricken.  Thus, there are material facts in dispute and the

Plaintiff is not entitled to judgment on the pleadings under § 523(a)(2)(A).

However, the Court has stricken all substantive defenses raised in response to the

§ 523(a)(19) claim; therefore, there are no material facts in dispute.  For a judgment on the

pleadings to be issued, the Court must determine whether the requirements of § 523(a)(19)

have been satisfied.  In order for a debt to be excepted from discharge under § 523(a)(19),

"two elements must be established: (1) a debt that is for a violation of state securities laws;

and (2) the debt results from a judgment or order in a federal or state judicial proceeding."

*Okla. Dept. of Sec. ex rel. Faught v. Mathews*, 423 B.R. 684, 687-88 (W.D. Okla. 2010).

In the case at hand, there is a valid judgment issued by the state court against the

Defendants prior to the petition date.  The Defendants' Answer admits that the state court's

judgment held Defendants liable for violating the SC Securities Act. *See* Doc. No. 20 at ¶¶

H, viii-ix.  Therefore, the second requirement (i.e., Subsection B) is satisfied and the Court

must determine whether the Complaint sufficiently alleges that the debt owed by Defendants

to Plaintiff "is for the violation of any of the . . . . State securities laws . . ." 11 U.S.C.

§ 523(a)(19)(A).

The Plaintiff's state court complaint[17] alleged that Defendants and their companies

violated various provisions of the SC Securities Act, rendering them liable under S.C. Code

Ann. § 35-1-509.  Section 35-1-509[18] of the South Carolina Securities Act:

> creates a civil cause of action against one who sells a security either (1) in
> violation of the Act's registration requirements or (2) "by means of an untrue
> statement of a material fact or omission to state a material fact necessary in
> order to make the statement made, in light of the circumstances under which
> it is made, not misleading...." S.C. Code § 35-1-509.  Sections 35-1-501 and
> 35-1-509 apply to any person who offers or sells a security.  Section 35-1-
> 509(b) relates to a seller's untrue statement or omission to state a material fact
> and provides the basis for the defendants' alleged violations.

*May v. Peninger*, C/A No. 2:07-cv-00864-CWH, 2008 WL 509470, slip op. at *7 (D.S.C.

Feb. 22, 2008).  Under the SC Securities Act, "[i]t is unlawful for a person to offer or sell a

security in this State unless: (1) the security is a federal covered security; (2) the security,

transaction, or offer is exempted from registration under Sections 35-1-201 through 35-1-

203; or (3) the security is registered under this chapter." S.C. Code Ann. § 35-1-301.

Plaintiff's state court complaint specifically alleged that her investment in one of

Defendants' companies is a security and that it "is not registered with the State or with the

federal Securities Exchange Commission." (Doc. No. 12, Ex. 1 at 4).  In addition, Plaintiff's

---

[17] The Court is not certain whether it should review the Amended Complaint filed in this adversary proceeding
for sufficient allegations or the state court complaint that led to the judgment, or both.  However, in this case
such a clarification is unnecessary because Plaintiff attached and incorporated the state court complaint into its
dischargeability complaint.

[18] The applicable subsection of S.C. Code Ann. § 35-1-509 provides that:
> A person is *liable to the purchaser* if the person sells a security in violation of Sections 35-1-
> 301 or 35-1-501 or, by means of an untrue statement of a material fact or an omission to state
> a material fact necessary in order to make the statement made, in light of the circumstances
> under which it is made, not misleading, the purchaser not knowing the untruth or omission
> and the seller not sustaining the burden of proof that the seller did not know and, in the
> exercise of reasonable care, could not have known of the untruth or omission. . . .
S.C. Code Ann. § 35-1-509(b).

complaint alleged that, by inducing Plaintiff to invest in the business, Defendants made a sale of a security that violated the securities registration requirement of S.C. Code Ann. § 35-1-301 because the security was not registered and neither the security nor the sale were exempted from registration.  Furthermore, Plaintiff alleged that Defendants misled her with false claims and she was damaged as a result.

The Court finds that Plaintiff sufficiently alleged the requirements for a cause of action under S.C. Code Ann. § 35-1-509.  The effect of the default judgment deems these allegations true; thus, the requirement set forth in Subsection A of § 523(a)(19) is fulfilled. *See Partington v. Am. Int'l Specialty lines Ins. Co.*, 443 F.3d 334, 347 (4th Cir. 2006) (There is a general principle that "a default judgment has the effect of deeming all factual allegations in the complaint admitted . . ."); *see also Karpii v. Greenville Terrazzo Co., Inc.* 327 S.C. 538, 544, 489 S.E.2d 679, 682-83 (Ct.App. 1997) ("If the answer is struck then liability is presumed . . .").

The Plaintiff is entitled to a judgment on the pleadings in her favor under § 523(a)(19) because all elements of § 523(a)(19) are met and there are no material facts in dispute.

It is hereby **ORDERED** that:

1. Plaintiff's Motion to Strike is **granted** with regard to any defenses that raise issues already decided by this Court's *Order Denying Motion to Dismiss* (Doc. No. 19);

2. Plaintiff's Motion to Strike is **denied** with regard to the remaining defenses asserted in response to the § 523(a)(2)(A) claim;

3. Plaintiff's Motion to Strike is **granted** with regard to the remaining defenses asserted in response to the § 523(a)(19) claim;

4. Plaintiff's Motion for Judgment on the Pleadings is **denied** with regard to the § 523(a)(2)(A) claim; and

5. Plaintiff's Motion for Judgment on the Pleadings is **granted** with regard to the § 523(a)(19) claim.  Therefore, the damages awarded in the state court judgment in the amount of $42,830.68 for Defendants' violation of the SC Securities Act are excepted from any discharge granted to Defendants in the bankruptcy proceeding.

**AND IT IS SO ORDERED.**